IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BDO SEIDMAN, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-634 |
| | ) | MDL No. 2021 |
| MARC S. KIRSCHNER, in his capacity | ) | MISC No. 09-162 |
| as the LIQUIDATION TRUSTEE of the | ) | |
| LE-NATURE'S LIQUIDATION TRUST, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Chief District Judge

## OPINION AND ORDER OF COURT
## SYNOPSIS

Pending before the court is Defendant Marc Kirschner's Motion to Compel Arbitration and to Stay or Dismiss This Action, filed in Defendant's capacity as the Liquidation Trustee of the Le-Nature's Liquidation Trust. (Docket No. 17 at 9-cv-634 and Docket No. 14 at 9-mc-162).[1] This matter, which is part of a larger group of lawsuits involving Le-Nature's, Inc., involves the cause and consequences of Le-Nature's bankruptcy, and a fraudulent scheme perpetrated by Le-Nature's CEO. For a portion of time, pursuant to engagement letters between the parties, BDO Seidman, LLP ("BDO") served as Le-Nature's auditors.

In brief, BDO filed suit against Kirschner seeking to rescind and cancel

---

[1]The Motion is filed at both the civil action number (09-cv-634) and the miscellaneous number (09-mc-162). Docket numbers from this point forward will refer solely to the civil action number. Defendant Kirschner is involved in his capacity as liquidation trustee of the Le-Nature's Liquidation Trust.

engagement letters entered into between BDO and Le-Nature's, and also to recover damages for alleged breaches of a subsequent mediation agreement between the parties. Presently, Defendant has filed a Motion to Compel Arbitration and to Stay or Dismiss Action, and contends that the parties' engagement letters compels them to arbitrate the charges in the Complaint.

For the following reasons, the Motion will be granted in part and denied in part.

## OPINION

Plaintiff does not dispute the applicability of the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 et seq.. The United States Supreme Court has repeatedly emphasized, as illustrated by the FAA, that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." E.g., Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). When determining whether a dispute falls within the scope of the agreement, the court may not stay arbitration unless the court can state "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steel, Paper & Forestry, Rubber, Mfg., Energ., Allied-indus. & Serv. Workers Local Union 943 vs. E.I. Dupont De Nemours & Co., No. 08-1911, 2009 U.S. App. LEXIS 15081, at *10 (3d Cir. July 2, 2009).

The Third Circuit Court of Appeals has delineated the scope of the district court's narrow inquiry, under circumstances such as those before me:

> Under the FAA the district court must be satisfied that the parties entered into a valid arbitration agreement. In conducting this inquiry the district court

decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid. 9 U.S.C. § 2. In so deciding, the district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine, as we have stated, whether there is a valid agreement to arbitrate. Once such an agreement is found, the merits of the controversy are left for disposition to the arbitrator. Moreover, there is a strong presumption in favor of arbitration, and doubts " concerning the scope of arbitrable issues should be resolved in favor of arbitration."

Great Western Mortg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997).

Therefore, my review is limited to whether a valid agreement existed, and whether Plaintiff's claims fall within its scope.

The parties do not dispute that they entered into an agreement to arbitrate. Each of the engagement letters between the parties contains the following clause:

> If any dispute, controversy, or claim arises in connection with the performance or breach of this agreement (including disputes regarding the validity or enforceability of this agreement) and cannot be resolved by facilitated negotiations (or the parties agree to waive that process), then such dispute, controversy, or claim shall be settled by arbitration.
> * * *
> The arbitration panel shall have no authority to award non-monetary or equitable relief…

BDO's First Amended Complaint, which is the subject of the present Motion, seeks equitable rescission and cancellation of the engagement letters based on various misrepresentations; and that Defendant be estopped and enjoined from relying on letters, including the arbitration provisions, due to those misrepresentations. BDO also seeks other relief relating to the alleged disclosure of confidential material divulged during mediation proceedings, including damages for breach of the mediation agreement.

I first address BDO's contention that because it seeks equitable relief, its claims are not subject to arbitration. "[I]f the claim is fraud in the inducement of the

arbitration clause itself -- an issue which goes to the "making" of the agreement to arbitrate -- the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . ." Prima Paint Corp. v. Flood and Conklin Mfg. Co., 388 U.S. 395, 403-404, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967).

Additionally, "[i]n ascertaining the substance of the action we are required to look beyond the prayer for relief to the substantive allegations of the complaint." Majuri v. United States, 431 F.2d 469, 473 (3d Cir. 1970). Moreover, "[w]hen interpreting [arbitration] contracts, we are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible." CTF Hotel Holdings v. Marriott Int'l, 381 F.3d 131, 137 (3d Cir. 2003). The plain language of the agreement must guide the Court's construction. Wall St. Aubrey Golf, LLC v. Aubrey, 189 Fed. Appx. 82, 85 (3d Cir. 2006).

In this case, the plain language of the agreement defines its scope by reference to the nature of the "dispute," which is the disagreement to be resolved, and not by the nature of the remedy sought, which is the action that corrects any error found.[2] In other words, the agreement does not limit the arbitrator's authority to determine whether the contract was fraudulently induced; it limits only the measures she may take to redress such a determination. BDO correctly notes that a party cannot be required to submit to arbitration any dispute which he has

---

[2]Ballantine's Law Dictionary, 3d ed. defines "remedy" as "the means employed to enforce a right or redress an injury."

not agreed to submit.  In this case, however, there is no clearly expressed intention to exclude any particular type of dispute from arbitration, or to limit the arbitrator's authority to adjudicate any particular type of dispute, other than one that does not arise from the engagement letters.[3]  To the contrary, the scope of the clause is quite broad, and specifically includes disputes regarding the validity or enforceability of the engagement letters.

With the distinction between substance and remedy in the fore, the answer in this case is evident.  BDO's equitable claims regarding the engagement letters center on allegations of fraud in the inducement of the engagement letters.  There can be no doubt that the substance of the dispute raised in BDO's complaint qualifies as "any dispute, controversy, or claim aris[ing] in connection with the performance or breach of this agreement (including disputes regarding the validity or enforceability of this agreement)."  Accordingly, accepting BDO's argument would nullify explicit portions of the engagement letters, and would stretch others to untenable lengths.

BDO's claims surrounding Defendant's alleged post-mediation conduct, however, are not so clearly subject to the agreement.  These disputes may be said to have arisen in connection with the engagement letters, in that they would not exist but for the parties' initial contractual relationship.  They did not, however, arise in connection with the performance or breach of the engagement letters.  Instead, they arose in connection with a subsequent agreement between the

---

[3]This is unlike Neurosource, Inc. V. Jefferson Univ. Physicians, No. 00-5401, 2001 U.S. Dist. LEXIS 1811 (E.D. Pa. Feb. 14, 2001). in which the arbitration clause expressly stated that "this arbitration provision does not apply to…claims…for injunctive or equitable relief…."

parties, which dictated the terms of the mediation process.  Accordingly, the plain language of the engagement letters does not encompass claims for breach of the written Mediation Agreement.  Contrary to Defendant's suggestion, the merits of those allegations are not now before me.  I find that those claims need not be arbitrated.[4]

**ORDER**

AND NOW, this 16th day of July, 2009, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Compel Arbitration and to Stay or Dismiss is GRANTED in part and DENIED in part.  All claims other than those related solely to breach of the Mediation Agreement are dismissed, and the parties must arbitrate those claims.  Claims relating solely to breach of the Mediation Agreement remain.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Chief Judge, U.S. District Court

---

[4]Neither party has raised the effect, if any, of my previous denial of BDO's Motion to Strike and Seal (Docket No. 26), in which BDO raised allegations substantially identical to those now raised in Count IV of the First Amended Complaint.

Similarly, whether claims for breach of the Mediation Agreement are intertwined with the remainder of the First Amended Complaint in such a way that renders them better resolved via arbitration, or following arbitration, is a matter that has not been placed before me.